UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| MICHAEL A. HOLLON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:04-cv-1264-SEB-VSS |
| | ) | |
| PRISON HEALTH SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Discussing Motion for Summary Judgment**

Prison Health Services ("PHS") seeks resolution of plaintiff Hollon's Eighth Amendment claim of denial of adequate medical care at an Indiana prison through the entry of summary judgment. As a result of prior rulings in this action, claims against Dr. Rieger, another defendant, and against Department of Correction ("DOC") Commissioner Ridley-Turner have been dismissed, and all defendants' request to resolve the claims based on their argument that Hollon failed to exhaust available administrative remedies prior to filing this action has been denied.

For the reasons explained in this Entry, the motion for summary judgment of PHS must be granted.

**Background**

A court will grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting FED.R.CIV.P. 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

The Supreme Court has explained that the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). The means by which this purpose is accomplished is by "pierc[ing] the pleadings and . . . assess[ing] the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and . . . demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party successfully carries his burden, the non-moving party must "go beyond the pleadings" and present specific facts which show that a genuine issue of material fact exists. *Id.* at 324. This may be done through the designation of specific facts in affidavits, depositions, answers to interrogatories or admissions. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992).  If the non-moving party fails to make a sufficient showing on an essential element of its case on which that party will bear the burden of proof at trial, the moving party is entitled to judgment as a matter of law. See *Celotex Corp.,* 477 U.S. at 322-23.

If the moving party meets this burden, the nonmoving party must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.,* 914 F.2d 107, 110 (7th Cir. 1990). Hollon has not met this burden here. Thus, the well-supported facts relied on by PHS in support of its motion for summary judgment are accepted as true for the purpose of the court's resolution of that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56.1(h), of which Hollon was notified.

The undisputed material facts established by the evidentiary record are the following:

- Hollon is an inmate at the Westville Control Unit, a facility operated by the DOC. He was previously confined at the Pendleton Correctional Facility ("Pendleton"), another prison operated by the Indiana Department of Correction ("DOC").

- On February 20, 2004, Offender Hollon was seen in physician sick call. Dr. Hermina examined Offender Hollon's left inguinal hernia and found it was easily reducible. Dr. Hermina reported the hernia had been "discovered" six weeks before. It was tender and Hollon reported minor discomfort on occasion. Because of Hollon's interest in surgical intervention Dr. Hermina informed Hollon that he would seek approval from PHS for an offsite surgical consultation. That same day, Dr. Hermina submitted a *Utilization Management Referral* (hereafter "*Referral*") on behalf of Hollon to PHS' Regional Medical Director Eke Kalu, M.D.  Dr. Hermina noted that Hollon had a 4 x 3 cm ovoid swelling hernia and that it was easily reducible. Dr. Hermina failed to report any conservative treatment of Hollon's hernia on the *Referral.* He did not indicate that Hollon was in severe pain. A request such as that made in the *Referral* was the policy established by PHS for non-emergency requests for offsite medical treatment. Each onsite physician was responsible for filling out the form completely and include any supporting medical documentation with the referral form.

- In 2004, the DOC had a "hernia policy." The policy called for conservative treatment of all hernias if the hernia was reducible. If the hernia was strangulated or non-reducible, the onsite physician completed a Utilization Management Referral Form for an offsite surgical consultation and began steps for immediately obtaining the offsite consultation. On February 23, 2004, Dr. Kalu reviewed the *Referral*. Dr. Kalu relied on and exercised his independent medical judgment in approving or denying an offender's immediate offsite or surgical consultation in the presence of a reducible hernia in 2004-05. In cases of inmates with reducible hernias, including Hollon, Dr. Kalu considered the duration of the condition, the symptoms currently present, any past history of similar problems, whether conservative measures had been tried, and the results of prior conservative measures. In cases where the development of the hernia was recent, the symptoms of pain were minor and transient the hernia was easily reducible and no conservative measures had been tried, Dr. Kalu would not approve an initial offsite surgical consultation. He would, instead, require conservative measures be tried first, including lower bunk pass to prevent climbing, reduced recreational activities such as running, jogging, weight lifting, work restrictions, and the use of a hernia truss. If these conservative measures were unsuccessful in managing the hernia and it became chronically painful or interfered with Hollon's activities of daily living, a surgical offsite consultation would be approved. Dr. Kalu was aware of the DOC hernia policy, but treated that policy as a guideline he considered in conjunction with an offender's requests, with the offender's condition and with his own medical judgment.

- Based upon the fact that Hollon was newly diagnosed with an "easily" reducible hernia and that no conservative treatment measures were reported to have been attempted to treat the hernia, Dr. Kalu denied the request for an offsite surgical consultation. He recommended that more conservative treatment measures first be attempted onsite at the PCF before considering an offsite consultation. Dr. Kalu faxed his decision back to Dr. Hermina on February 23, 2004.

- With respect to Hollon's second specification of denial of medical care, on July 24, 2004, he was approved for a "lower bunk pass" after being examined in nursing sick call. All requests for passes were handled onsite at PCF. A request for a bottom bunk pass would not have been submitted to the PHS Central Office or Dr. Kalu for approval.

This lawsuit was filed one week after Hollon was approved for a lower bunk pass. Hollon alleges in his complaint that: (1) PHS adopted a policy concerning hernia surgery under which surgery is generally not performed unless the hernias are strangulated or are not-reducible, with surgery for reducible hernias deemed to be elective, despite the hernia causing pain; and (2) PHS was deliberately indifferent to his serious medical needs by failing to ". . . consider a "bottom bunk pass." PHS became aware of Hollon's complaint against it on September 13, 2004.

3

## Discussion

Hollon's claim is asserted pursuant to 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 112 S. Ct. 1827, 1830 (1992). To state a claim under § 1983, a plaintiff must allege (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978).

Subject matter jurisdiction over Hollon's claim is conferred by 28 U.S.C. § 1331, which provides that "[t]he District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

The Eighth Amendment's proscription against the imposition of cruel and unusual punishment provides the constitutional standard for the treatment of convicted offenders such as Moore-Bey. *Helling v. McKinney*, 113 S. Ct. 2475, 2480 (1993). That is the pertinent constitutional provision associated with the claim in this action. The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (citation and internal quotations omitted). In the specific context of the asserted denial of medical care, in order for an inmate to state a claim for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). A prisoner's medical need is objectively serious if it is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Zentmyer v. Kendall County, Ill.,* 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997)).

> The inquiry into deliberate indifference is a subjective one that asks whether "the prison official acted with a sufficiently culpable state of mind." *Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002) (citation omitted). A prison official has a sufficiently culpable state of mind when the official "knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Id.* (citation omitted).

*Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006). A court examines the totality of an inmate's medical care when determining whether defendants have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). It is well-settled that while incarcerated, an inmate is not entitled to the best possible care or to receive particular treatment of his choice. *See Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997). Hollon is "entitled to reasonable measures to meet a substantial risk of serious harm." *Id.*

*The Hearnia Policy and Treatment of Hollon's Hernia.* The hernia policy of the DOC did not, in Hollon's case, interfere with the exercise of independent medical judgment on the part of the physician either at the PCF or the physician who reviewed and acted on the *Referral.* The hernia policy alleged by Hollon to exist did not exist with the content or substance he alleged. Neither in the DOC policy, nor in any procedure established by PHS, nor in the decisions reached by either Dr. Hermina or Dr. Kalu, was Hollon denied constitutionally adequate medical care. Although Hollon's allegations suggest his view that surgical repair of the hernia would have been appropriate from the outset, any such view would represent a mere difference of opinion, and "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001). The evidentiary record shows without question, and certainly without any basis for a genuine question of material fact, that Dr. Hermina and Dr. Kalu were not deliberately indifferent to Hollon's hernia condition and that their medical judgments in this regard were not "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [he] did not base the decision on such a judgment." *Estate of Cole v. Fromm,* 94 F.3d 254, 262 (7th Cir. 1996), *cert. denied,* 519 U.S. 1109 (1997). These circumstances negate the existence of deliberate indifference regarding Hollon's hernia-related medical care at the PCF insofar as placed at issue in this lawsuit. *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996) ("If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."), *cert. denied,* 519 U.S. 1115 (1997).

PHS is correct, moreover, in arguing that it is well settled that 42 U.S.C. §1983 does not "support a claim based on a *respondeat superior* theory of liability." *Iskander v. Village of Forest Park,* 690 F.2d 126, 128 (7th Cir. 1982). Just as a "municipal corporation is not vicariously liable upon a theory of *respondeat superior* for the constitutional torts of its employees, a private corporation is not vicariously liable under §1983 for its employees deprivations of others' civil rights." *Id.*

Based on the foregoing, Hollon has not shown the existence of a genuine issue for trial as to the medical care given or decisions made relating to the initial treatment of his hernia after it had been diagnosed.

*The Lower Bunk Pass.* As the evidentiary record shows, PHS was not involved in a decision as to whether Hollon would receive a lower bunk pass. PHS cannot be found liable for the delay in issuing or failure to issue such a pass. Just as a municipal corporation is not vicariously liable upon a theory of *respondeat superior* for the constitutional torts of its employees, a private corporation is not vicariously liable under §1983 for its employees deprivations of others' civil rights. A plaintiff must show an "'impermissible policy' or a 'constitutionally forbidden' rule of procedure" which was the "moving force of the constitutional violation." *Iskander,* 690 F.2d at 128; *see also Natale v. Camden County,* 318 F.3d 575 (3rd Cir. 2003). Hollon has not done this, nor has he attempted to do so.

## Conclusion

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 305-06 (1st Cir. 1997)(quoting *Fed.R. Civ.P.* 56(e) advisory committee's note to 1963 amendment). "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Liberles v. County of Cook,* 709 F.3d 1122, 1126 (7th Cir. 1983). Hollon has not submitted any evidence that there was any affirmative policy or custom of PHS to exhibit deliberate indifference toward the serious medical needs of inmates at the PCF.  Because Hollon has not done that in this case, and because PHS has shown its entitlement to judgment as a matter of law based on the undisputed evidentiary record, its motion for summary judgment must be granted. Judgment consistent with this Entry and with the prior rulings in this case shall now issue.

**IT IS SO ORDERED**.

Date: 10/26/2006

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana